UNITED STATES of America, Appellee,

v.

Gary Allen STOREY, Appellant.

No. 92–1783.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1993.

Decided April 15, 1993.

Mark S. Trustin, Omaha, NE, argued, for appellant.

William W. Mickle II, Asst. U.S. Atty., Omaha, NE, argued, for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and NANGLE,* Senior District Judge.

WOLLMAN, Circuit Judge.

Gary Allen Storey appeals from the district court's [1] order rejecting the report and recommendation of the magistrate judge and dismissing Storey's motion to correct his sentence under 28 U.S.C. § 2255. We affirm.

I.

On June 15, 1989, a grand jury charged appellant Gary Storey with various offenses related to a conspiracy to distribute cocaine, alleged to have occurred between October 1987 and May 1989. These charges included counts for conspiracy to distribute more than five kilograms of cocaine, conspiracy to possess with intent to distribute the cocaine, interstate travel in

---

* The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Southern District of Georgia, sitting by designation.

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

furtherance of the conspiracy, and possession with intent to distribute the cocaine.

Storey was represented in the action by Bruce D. Fleming, a Council Bluffs, Iowa, attorney. Fleming had practiced in both Iowa and Nebraska and had seventeen years of experience at the time. Although Fleming had tried state criminal cases before, he had not previously tried any criminal cases in federal court. Stephen P. O'Meara, Assistant United States Attorney for the District of Nebraska, represented the United States. O'Meara had tried several drug-related cases in the federal courts and was familiar with the United States Sentencing Guidelines.

After assessing Storey's case, and with his consent, Fleming initiated plea negotiations with O'Meara. Fleming and O'Meara arrived at an agreement that Storey would plead guilty to a reduced charge of conspiracy to distribute cocaine in the amount of 400–499 grams. It was agreed that the charge would result in an initial offense level of twenty-four, reduced by two points for Storey's acceptance of responsibility, resulting in a net level of twenty-two.

On September 15, 1989, O'Meara sent Fleming a letter enclosing a proposed plea agreement. The plea agreement was in the form of a draft letter to Storey. Paragraph five of the letter addressed the subject of the defendant's cooperation with the government and stated that such cooperation would be brought to the attention of the court. That paragraph also contained the following sentence: "It is further understood that this office will bring your cooperation to the attention of federal parole authorities at the proper time upon request." The draft proposal was formalized in a letter from O'Meara to Storey dated October 16, 1989, which was executed by Storey on October 30, 1989, and approved by O'Meara on November 1, 1989.

On November 9, 1989, Storey filed a petition to enter a plea of guilty with the district court. The petition, which had been signed under the penalties of perjury, contained the following paragraph:

25. Under the new sentencing guidelines, parole has been abolished. Thus, if imprisonment is ordered in your case, the sentence imposed by the Court will be the sentence you will serve [less good time credit if you earn it]. Do you understand this?
Yes _X_ No ___

At the outset of Storey's plea hearing, the district court placed Storey under oath and informed him that "if you answer my questions your answers may later be used against you in a prosecution for perjury or false statement." The district court also informed Storey that "I want to repeat again and make sure that you fully understand [that] the maximum sentence [is] ... a term of imprisonment of not more than twenty years or you may be fined $1 million or you may be both so imprisoned and fined...." During the course of the plea hearing, the district court also engaged in a detailed colloquy with Storey to ascertain his knowledge and acceptance of the charges to which he was pleading guilty. Relevant excerpts from that hearing follow:

The Court: Now referring to the Petition to Enter a Plea of Guilty, did you review that with your attorney?

The Defendant: Yes, I did.

The Court: You read through it, yourself, did you?

The Defendant: Yes.

The Court: *Did you answer personally each of the questions that are contained in this Petition to Enter a Plea of Guilty?*

The Defendant: *Yes, I did.*

The Court: *Are each of your answers true?*

The Defendant: *Yes.*

The Court: Do you have any questions about anything that is contained in any of these documents, specifically the Petition to Enter a Plea of Guilty?

The Defendant: No, sir.

. . . .

The Court: Do you feel you understand everything that is set out in those four documents, specifically the Petition to Enter a Plea of Guilty, the letter of October 16th, 1989, which sets out the Plea

Agreement, the Information which has been filed in this case against you, or the indictment that has been filed in Case Number 89–0–81?

The Defendant: Yes, sir.

. . . .

The Court: Do you think you have had sufficient time to discuss with your attorney your Petition to Enter a Plea of Guilty, the letter of October 16th, 1989, which sets out the Plea Agreement, the Information and the indictment?

The Defendant: Yes, sir.

. . . .

The Court: . . . . Has anyone connected with law enforcement or has anyone else made any threat, direct or indirect, or used any force or held out any inducement or promises other than this Plea Agreement that we have referred to to get you to plead guilty to this Information?

The Defendant: No, sir.

The Court: Are you pleading guilty freely and voluntarily?

The Defendant: Yes, sir.

The Court: Question 46 of the Petition to Enter a Plea of Guilty asks, "What acts did you do which caused you to think that you are guilty of the charge or charges to which you now want to plead guilty?" and the answer there, your answer there is, "Set up a deal for the illegal purchase of cocaine." Is that your answer, Mr. Storey?

The Defendant: Yes, sir.

The Court: And is that a truthful answer?

The Defendant: Yes, sir.

. . . .

The Court: . . . . The government would have to prove beyond a reasonable doubt that you did combine, conspire, confederate, and agree with another person to distribute and possess with intent to distribute a Schedule 2 controlled substance. Do you understand that?

The Defendant: Yes.

The Court: The government would have to prove beyond a reasonable doubt that that Schedule 2 controlled substance was cocaine. Do you understand that?

The Defendant: Yes.

The Court: And the government would have to prove that that cocaine was in the amount of from 400 grams to 499 grams. Do you understand that?

The Defendant: Yes.

The Court: . . . . Do you understand, Mr. Storey, that each of the things that I have told you here before or each of the things that I may tell you hereafter that the government has to prove beyond a reasonable doubt, that the government has to prove each of those items beyond a reasonable doubt. Do you understand that?

The Defendant: Yes, sir.

. . . .

The Court: Do you have any questions about what the government would have to prove beyond a reasonable doubt before you could be convicted of the crime as set forth in this Information?

The Defendant: No, sir.

The Court: Did you commit this offense as set out in the Information?

The Defendant: Yes, sir.

The Court: Are you pleading guilty solely and only because of the reason that you did in fact do the things that are charged in the Information?

The Defendant: Yes, sir.

The Court: Do you still want to plead guilty?

The Defendant: Yes.

On February 26, 1990, the district court sentenced Storey to five years' imprisonment, to be followed by five years of supervised release.

On May 13, 1990, Storey filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, asserting that he had been denied effective assistance of counsel because (1) Fleming had erroneously advised Storey that he would be eligible for parole; and (2) Fleming had failed to object to inaccuracies in the presentence investigation report which affected the length of the sentence imposed. The magistrate judge found the second ground to be meritless; but ordered a hearing with respect to the first ground.

On September 16, 1991, the magistrate judge held an evidentiary hearing with respect to the first ground of Storey's motion. Storey testified, essentially, that (1) Fleming had informed him that he, Storey, would be eligible for parole eighteen months after sentencing, (2) that he relied on this information in entering into the plea agreement, and (3) that the possibility of parole was the critical factor in his decision to enter a plea of guilty.

Fleming testified that O'Meara had stated that Storey would likely spend "two years in jail" for his offense and that Storey would be eligible for parole after approximately eighteen months. O'Meara denied having made any such representations. O'Meara testified that the sentence in paragraph five of the October 16, 1989, letter referring to the government's calling Storey's cooperation to the attention of federal parole officers should not have been included in the agreement because the Sentencing Reform Act had eliminated parole. He referred to the language in question as "a scrivener's error."

In his report and recommendation, the magistrate judge found that the advice Fleming provided to Storey amounted to ineffective assistance of counsel because it was erroneous and that Storey had been prejudiced because he had pleaded guilty in reliance upon it.

Reviewing the magistrate judge's findings *de novo*, the district court found that "[w]henever their testimony is in conflict, the Court finds O'Meara's testimony credible and the testimony of Fleming, the Defendant, the Defendant's mother, and the Defendant's father completely incredible." *See* D.Ct. Order of March 27, 1992, at 5. The district court also found that "although the sentence in question [regarding parole] was erroneously included in the October 16, 1989, letter from O'Meara to Fleming, the Court finds no credible evidence in the record indicating that the Defendant was ever told that he would be in fact entitled to parole." *Id.*

## II.

Title 28, Section 636(b) requires the district court to review *de novo* those portions of a magistrate judge's reports and findings which are objected to by a party. *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir.1990). We examine a district court's findings on a post-conviction motion alleging ineffective assistance of counsel under the clearly erroneous standard of review. *See United States v. Auerbach*, 745 F.2d 1157, 1161 (8th Cir.1984). We also note that "the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir.1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)).

## III.

To set aside his guilty plea based upon a claim of ineffective assistance of counsel, Storey must show that his counsel's performance "'fell below an objective standard of reasonableness ... [and] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)). "To establish prejudice in the context of the plea process the defendant must show 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Garmon v. Lockhart*, 938 F.2d 120, 121 (8th Cir.1991) (quoting *Hill*, 474 U.S. at 59, 106 S.Ct. at 370).

As indicated above, the district court found the testimony of O'Meara to be credible and that of Storey and his witnesses to be "completely incredible." Storey has failed to advance any substantial reason why we should consider this finding of fact to be clearly erroneous. Item 25 of Storey's petition to enter a plea of guilty specified that he would not be eligible for parole. Storey indicated that he under-

stood this circumstance by marking an "X" in the appropriate box and signing the petition. Storey's testimony at the plea hearing lends further support to the district court's findings. The district court informed Storey that he could be prosecuted for perjury for any false statements made during the plea hearing. Testifying under oath, Storey told the district court that no one had "held out any inducement or promises other than this Plea Agreement" to induce him to plead guilty. Storey also told the district court that the only reason he was pleading guilty to the charge was because he "did in fact do the things that are charged in the Information." The district court specifically told Storey that the crime to which he intended to plead guilty carried a maximum penalty of twenty years imprisonment *and* a $1 million fine. Last, a decision not to plead would have exposed Storey to criminal liability for multiple counts relating to a conspiracy to distribute more than five kilograms of cocaine. Given Storey's criminal history score of five (Criminal History Category III), a conviction on the conspiracy count alone (Level 32) would have meant a sentencing range of between 151 and 188 months. At the magistrate judge's hearing, Fleming testified that after researching federal law concerning conspiracy, "I felt that the case was a threat to Mr. Storey, that there was a danger of conviction," and that he had therefore recommended to Storey that he initiate plea negotiations.

Having presided at the plea hearing, the district court had the opportunity to assess Storey's credibility. Our review of the transcript of the plea hearing shows a meticulous effort by the district court to ensure that Storey's plea was offered in a knowing and voluntary manner. Given that meticulously careful effort, it is not surprising that the district court found Storey's after-the-fact attack upon his sentence to be lacking in credibility, an assessment borne out by the record.

1. The Honorable John Bailey Jones, Chief Judge, United States District Court for the Dis-

The judgment of the district court is affirmed.