**Gilford Leroy IRON WING, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 93–2878.**

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1994.

Decided Sept. 8, 1994.

---

.Craig E. Smith, Gettysburg, SD, argued, for appellant.

Mikal Hanson, Asst. U.S. Atty., Pierre, SD, argued, for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MAGNUSON *, District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Gilford Leroy Iron Wing appeals from denial of his 28 U.S.C. § 2255 (1988) motion to vacate his sentence. Iron Wing pleaded guilty to a charge of committing a crime of violence with a dangerous weapon in violation of 18 U.S.C. § 924(c)(1) (Supp. IV 1992). In his motion to set aside this conviction, he argued that police seized a rifle from his house without a search warrant, exigent circumstances, or valid consent, and that his trial counsel was ineffective in failing to move to suppress the rifle. Iron Wing says that if he had known of the possibility of a suppression motion, he would not have pleaded guilty. We affirm the judgment of the district court [1].

Iron Wing's wife, Darla, and her sister and brother-in-law, Loretta and Edward Cadotte, were all attending Standing Rock Community College in Fort Yates, North Dakota. Iron Wing's car broke down and Darla, Lor-

---

* The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Donald J. Porter, Senior United States District Judge for the District of South Dakota.

etta and Ed Cadotte mutually agreed that the Cadottes would stay at the Iron Wing residence and, in return, give Darla a ride to school. Shortly thereafter, Iron Wing went to a local bar and began drinking and gambling. Later in the day Loretta came to the bar and told Iron Wing that Ed and Darla were at Iron Wing's house alone. Iron Wing went home. Iron Wing and Darla had an argument, in which Ed attempted to intervene. Iron Wing poked a rifle into Ed's midsection and tried to load the rifle. The shell popped out of the gun, and the rifle jammed. Darla jumped out the window. Iron Wing chased Darla, caught her, pulled her down by her hair, pointed the rifle at her head, and pulled the trigger. The rifle did not fire. Iron Wing then grabbed the rifle by the barrel and beat Darla hard enough to break the stock of the rifle.

In the meantime Ed escaped and ran for help. Police arrived at the house and knocked on the doors, but got no answer. About this time, Loretta pulled up to the house in her car. Loretta told police that she was living in the house with her sister Darla. Loretta said that the windows to her bedroom were unlocked, and she offered to go into the house and unlock one of the doors to let the officers in. One of the officers had seen Loretta at the house previously. After Loretta let the police in, she brought them Iron Wing's rifle with the broken stock.

Iron Wing was charged with the assaults of Darla Iron Wing and Ed Cadotte and for use of a firearm in a crime of violence. He pleaded guilty to the firearm charge.

Iron Wing later brought this motion under 28 U.S.C. § 2255. At the hearing on the motion, Iron Wing's trial counsel, Robbenolt, testified that he did not recall whether he and Iron Wing had discussed suppression of the rifle, or whether Iron Wing asked his opinion on this issue. Robbenolt stated that there was no reasonable basis to suppress the rifle because there was "credible evi-

dence that would have 'countermanded' suppression." Even if the rifle had been suppressed, Darla and Ed could certainly have testified that it existed. Robbenolt concluded that the admissibility of the weapon would not have made any difference to the outcome of a trial.

Iron Wing testified at the hearing that he did not know there was a question as to whether the rifle was admissible at trial. He said that if the rifle had been suppressed and could not have been used against him, he would not have pleaded guilty.

The magistrate judge conducted a hearing and made findings of fact, which the district court accepted, adding findings in response to Iron Wing's objections. The district judge concluded that there was no showing of ineffective assistance of counsel.

■ On appeal Iron Wing argues that his counsel was ineffective in failing to inform him that his rifle might be suppressed,[2] since he would not have pleaded guilty had he known of this legal issue.

■ A district court's decision in a habeas claim of ineffective assistance of counsel presents a mixed question of fact and law. *Laws v. Armontrout,* 863 F.2d 1377, 1381 (8th Cir.1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). We review the ineffective assistance issue *de novo,* but findings of underlying predicate facts are reviewed under the clearly erroneous standard. *Id.*

■ To set aside his guilty plea on the ground of ineffective assistance of counsel, Iron Wing must show that his counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985)

---

2. Iron Wing's brief also includes a point bringing up the Fourth Amendment claim in its own right, rather than as part of a claim that his plea was involuntary. However, "[a] defendant's knowing and intelligent guilty plea forecloses 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *United States v. Vaughan,* 13 F.3d 1186, 1187–88 (8th Cir.) (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)), *cert. denied,* — U.S. ——, 114 S.Ct. 1858, 128 L.Ed.2d 481 (1994).

(citations omitted); *United States v. Storey,* 990 F.2d 1094, 1097 (8th Cir.1993).

The district court accepted the magistrate's conclusion that trial counsel's failure to move to suppress the rifle did not prejudice Iron Wing, both because Iron Wing would have lost the motion and because the government could present testimony that he had the rifle and that it was broken without introducing the rifle into evidence.

■ Iron Wing argues that he would have won his suppression motion because the police had no reason to conclude that Loretta Cadotte had authority to let them into Iron Wing's house. Under *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), there is no Fourth Amendment violation if "the facts available to the officer" at the time of the search would warrant a reasonable man in the belief that someone with authority over the premises consented to the search. *Id.* at 188, 110 S.Ct. at 2801. We review the consent determination under the clearly erroneous standard. *United States v. Brokaw,* 985 F.2d 951, 954 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 249 (1993). The magistrate judge held that the officers had no reason to doubt Loretta's authority to invite them into the house, and the district court accepted his conclusions. Iron Wing argues that it was unreasonable for the officers to believe that Loretta had authority over the premises, since she did not have a key and had to crawl in the window.

■ We do not accept Iron Wing's argument that a key is necessary to establish authority over the premises. Here, Loretta was living at the house and she told police so. She corroborated this statement by her familiarity with the house and the fact that she knew she had left her bedroom window unlocked. The conclusion that Loretta had authority to consent to the search was easily as reasonable as that we approved in *Brokaw,* 985 F.2d at 954. There, police obtained consent from the resident and owner of a cabin to search a nearby camper where Brokaw and his girlfriend were sleeping. The cabin owner stated that he owned the camper and that the camper was on his land. He assumed authority to consent to the search.

The *Brokaw* district court did not err in holding that the police could conclude the cabin owner had common authority over the camper.

■ Iron Wing also argues that if he had prevailed in his suppression motion, he would not have pleaded guilty to the firearms charge. We need not belabor this point. Iron Wing was originally charged with two counts of assault with a deadly weapon and one count of use of a firearm in a crime of violence. He pleaded guilty only to the firearm count. Evidence against him (other than the rifle) included: testimony of Darla and Ed; medical reports and pictures of Darla's injuries; tribal records showing that Iron Wing owned the gun and had allegedly used it in an earlier assault on his mother-in-law; and various 30–30 cartridges scattered around the scene of the incident. Suppression of the rifle would not have reduced the strength of the government's case against Iron Wing. As the district court found, the plea agreement was a prudent course for Iron Wing with or without the rifle.

In sum, Iron Wing has not shown that his counsel was ineffective. We affirm the judgment of the district court.