**Juan FAMILIA–CONSORO,
Petitioner, Appellant,**

**v.**

**UNITED STATES, Respondent, Appellee.**

**No. 97–1467.**

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1998.

Decided Nov. 17, 1998.

---

Jane Elizabeth Lee for appellant.

Kenneth P. Madden, Assistant United States Attorney, with whom Margaret E.

Curran, United States Attorney, was on brief for appellee.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, LYNCH, Circuit Judge.

BOWNES, Senior Circuit Judge.

After his convictions for possession of cocaine and conspiracy to distribute cocaine were affirmed on direct appeal, Juan Familia–Consoro ("Familia") moved to vacate his sentence pursuant to 28 U.S.C. § 2255 (1994), contending that a conflict of interest infected his trial counsel's performance. The alleged conflict arose because Familia's brother, Bonifacio, who had agreed to pay Familia's attorney's fee, still owed the lawyer approximately three thousand dollars at the start of trial. At trial, Familia sought to defend himself against the drug charges by suggesting that the cocaine discovered in his apartment belonged to Bonifacio. In seeking collateral relief, Familia argued that his attorney did not aggressively pursue the blame-the-brother strategy out of a desire to obtain the balance of his fee.

The district court denied the motion after conducting an evidentiary hearing. We conclude that the court properly rejected the claim, and now affirm.

## I.

We briefly sketch the history of the case. On November 11, 1991, police officers entered Familia's Providence, Rhode Island, apartment to execute a search warrant. A loaded .38 caliber handgun was found under the mattress. At some point during the search, the police discovered that one of the drawers of a freestanding dresser was nailed shut. When the officers looked behind the drawer, they found a paper bag and a metal box. The box contained $3,866 and two Rhode Island state lottery receipts in the name of "Juan Familia." The paper bag contained plastic bags filled with cocaine (299.22 grams). Police also seized a bottle of inositol, a cocaine cutting agent, from atop the dresser.

On the basis of the fruits of this search, a grand jury indicted Familia and his live-in girlfriend, Priscilla Jackson ("Jackson"), for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1998) and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841 (1998). Familia was also charged with using a firearm in connection with a drug trafficking crime. See 18 U.S.C. § 924(c)(1998).

A jury convicted Familia and Jackson on the two drug counts, but acquitted Familia on the gun count. The district court sentenced Familia to eighty-five months of imprisonment, followed by five years of supervised release.

Familia appealed pro se from his convictions. His sole contention on appeal was that his counsel rendered ineffective assistance of counsel due to a conflict of interest. We affirmed his conviction and sentence without prejudice to his raising the claim in a proceeding under 28 U.S.C. § 2255, consistent with our practice disfavoring the consideration of ineffective assistance claims on direct appeal. See United States v. Familia, No. 92–1685, 1994 WL 390142 (1st Cir.1994).

On or about March 3, 1995, Familia moved to correct his sentence pursuant to Fed. R.Crim.P. 35 on the ground that the court miscalculated the quantity of drugs fairly attributable to him. The motion was denied by the district court, and we subsequently upheld that decision. See United States v. Familia, No. 95–1447, 1995 WL 674501 (1st Cir.1995).

On January 22, 1996, Familia collaterally attacked his sentence by challenging the propriety of certain sentencing enhancements and the adequacy of trial counsel's representation due to, inter alia, a conflict of interest. He elected to proceed only with his conflict of interest claim.

Familia's claim hinged on the theory that economic self-interest tainted his lawyer's representation at trial. Early on, Familia's brother, Bonifacio, had offered to pay Familia's legal fees and had secured the services of a lawyer, John M. Cicilline, on Familia's behalf. At trial, Familia's counsel had suggested to the jury that Bonifacio was the true owner of the cocaine discovered in Familia's bedroom. Familia now asserted, however,

that his attorney had not been sufficiently zealous in portraying Bonifacio as the real culprit because he hoped that Bonifacio would pay the remainder of the outstanding fee.

The district court, which had originally presided over Familia's trial, held a hearing on the § 2255 motion on December 17, 1996. Cicilline, the only witness at this hearing, testified that Bonifacio paid him $1500 as a retainer and later paid him an additional $500, but never paid the balance of the fee (approximately $3000). Cicilline acknowledged discussing with Familia the strategy of blaming Bonifacio for stashing the drugs in Familia's apartment and stated that he actively pursued this defense at trial. Cicilline also testified that Bonifacio never instructed him not to argue that the drugs were owned by Bonifacio and that Bonifacio did not place any restrictions on his representation of Familia. Finally, he explained that he had met with Bonifacio a few times in an attempt to get paid (succeeding once), but did not try to subpoena him to testify because he did not know where Bonifacio lived and did not believe that Bonifacio's testimony would be helpful.

The district court denied Familia's § 2255 motion based on the purported conflict. In so ruling, it accepted Cicilline's sworn denial that he downplayed Familia's defense out of a desire to obtain the balance of his fee. The court concluded that Familia's trial counsel had, in fact, presented the blame-the-brother defense, doing "the best he could with the circumstances," but that the jury simply rejected the defense.

## II.

The Sixth Amendment guarantees a defendant effective assistance of counsel. There can be no doubt that a lawyer who has an actual conflict of interest deprives his client of effective counsel by his attempt to "serve two masters." *See Cuyler v. Sullivan,* 446

U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (quoting *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). The question in this case is whether there was such a conflict.

To prevail on a claim of unconstitutional conflict, a defendant "who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348, 100 S.Ct. 1708. If a defendant proves that a conflict "actually affected the adequacy of his representation," he need not show prejudice to obtain relief. *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. 1708. Unless and until this threshold is met, however, a defendant "has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350, 100 S.Ct. 1708. In this Circuit, we have elaborated upon the *Cuyler* rule to require a defendant to show that (1) the attorney could have pursued a plausible alternative defense strategy and (2) the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests. *See Bucuvalas v. United States,* 98 F.3d 652, 656 (1st Cir.1996).

Although the standard of review of a conflict claim made in a § 2255 motion has been left an open question in the past,[1] we resolve that issue today. We explicitly adopt the standard we previously had suggested only implicitly. *See, e.g., United States v. Raineri,* 42 F.3d 36, 43 (1st Cir.1994). The question whether a conflict of interest impermissibly tainted an attorney's performance is a mixed question of law and fact, *see Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cuyler,* 446 U.S. at 342, 100 S.Ct. 1708, one that calls for "the application of legal principles to the historical facts of [a given] case." *Cuyler,* 446 U.S. at 342, 100 S.Ct. 1708.

On appeal from the grant or denial of a § 2255 motion, we conduct a plenary review of the lower court's ultimate legal deter-

1. *See, e.g., Bucuvalas,* 98 F.3d at 657 n. 1 (observing that standard of review of district court's findings as to conflict issue is "not clear"); *United States v. Raineri,* 42 F.3d 36, 43 (1st Cir.1994) (noting that review of ineffective assistance claims "may be more rigorous where the issue is

not a matter of historical fact but of deciding how much competence is enough"); *United States v. McGill,* 11 F.3d 223, 226 n. 2 (1st Cir.1993) (expressing "some uncertainty" about proper standard of appellate review).

mination whether an unconstitutional conflict actually existed.[2] In embracing the de novo standard, we join virtually every other circuit in the land. *See United States v. Moore,* 159 F.3d 1154, 1998 WL 682173, at *2 (9th Cir. 1998) ("A claim of conflict of interest on the part of trial counsel is a mixed question of law and fact that we review de novo."); *Williams v. French,* 146 F.3d 203, 212 (4th Cir.1998) (same); *Spreitzer v. Peters,* 114 F.3d 1435, 1450 (7th Cir.1997) (same), *cert. denied,* — U.S. —, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998); *United States v. Kauffman,* 109 F.3d 186, 187 (3d Cir.1997) ("Because ineffective assistance of counsel claims present mixed questions of law and fact, our review is plenary."); *United States v. Gallegos,* 108 F.3d 1272, 1279 (10th Cir.1997) ("we review the district court's determination of whether an actual conflict existed de novo"); *United States v. Hopkins,* 43 F.3d 1116, 1118 (6th Cir.1995) ("Whether the facts in a particular case give rise to a conflict of interest is a mixed question of law and fact which we review de novo."); *Iron Wing v. United States,* 34 F.3d 662, 664 (8th Cir.1994) (applying same approach for ineffective assistance claims generally); *Porter v. Singletary,* 14 F.3d 554, 561 (11th Cir.1994) (reviewing conflict claim de novo); *Winkler v. Keane,* 7 F.3d 304, 308 (2d Cir.1993) (same); *Beets v. Collins,* 986 F.2d 1478, 1482 (5th Cir.1993) (same). *But see United States v. Askew,* 88 F.3d 1065, 1070–71 (D.C.Cir.1996) (leaving question unresolved).

We recognize that the question—whether a lawyer had an "actual" conflict that "adversely affected" the quality of his services—is intensely fact-bound in nature. The claim often turns on the precise details giving rise to the purported conflict, including what actions were taken by counsel, counsel's explanations for his conduct, and even counsel's (and perhaps defendant's) credibility. For this reason, we accord the district court's underlying factual findings due deference,[3] as we do to state court findings under 28 U.S.C. § 2254(d), rejecting them only if they are clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052 ("district court findings [associated with ineffective assistance claims] are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a)"); *Lema v. United States,* 987 F.2d 48, 53 (1st Cir.1993) (applying clearly erroneous standard to factual findings underpinning ineffective assistance claim in § 2255 petition); *cf. Ornelas v. United States,* 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding that questions of reasonable suspicion and probable cause under Fourth Amendment should be reviewed de novo but that "findings of historical fact" should be examined "only for clear error").[4]

Familia promotes two lines of argument on appeal: that his counsel's continued representation of him posed such a threat to his right to adequate counsel as to constitute a

---

**2.** We do not suggest that every mixed question of law and fact is subject to de novo review, but rather that the interests of controlling and clarifying legal principles in this area dictate such a result here, similar to those interests under the Fourth Amendment which led the Supreme Court to adopt de novo review in *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

**3.** The Supreme Court has called such underlying facts "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'" *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (quoting *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469 (1953)).

**4.** Several circuits expressly follow this bifurcated approach. *See, e.g., Gray–Bey v. United States,* 156 F.3d 733, 736–38 (7th Cir.1998) (reviewing denial of § 2255 motion de novo but applying

clearly erroneous standard to findings of fact); *United States v. Gallegos,* 108 F.3d 1272, 1279 (10th Cir.1997) (reviewing district court's determination "whether an actual conflict existed" de novo but factual findings for clear error); *United States v. Placente,* 81 F.3d 555, 558 (5th Cir. 1996) (same); *United States v. Camacho,* 40 F.3d 349, 353 (11th Cir.1994) (same); *Iron Wing v. United States,* 34 F.3d 662, 664 (8th Cir.1994) (same); *Sanders v. Ratelle,* 21 F.3d 1446, 1451–52 (9th Cir.1994) (same); *United States v. Gambino,* 864 F.2d 1064, 1071 n. 3 (3d Cir.1988) (conducting "plenary determination" of legal conclusion as to existence of actual conflict but noting that "to the extent that the legal conclusions reached ... are dependant upon the findings of the district judge of basic, primary, or historical facts in the sense of a recital of external events and the credibility of the witnesses, his findings should be accepted unless clearly erroneous.").

*per se* breach of the Sixth Amendment; and that, even if it did not rise to the level of a *per se* violation, the facts nevertheless demonstrate that a conflict of interest adversely affected his lawyer's performance. Neither of these claims has merit. We address them *seriatim.*

■ While courts have found *per se* conflicts in especially egregious circumstances, we decline Familia's invitation to hold that his lawyer's continued representation of him posed an inherent, irreconcilable conflict of interest. The cases in which *per se* conflicts have been found typically involved situations where a lawyer failed to divulge a conflict implicating his own criminal conduct. *See, e.g., United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984) (foregone defense may have revealed lawyer's own involvement in related conspiracy); *Solina v. United States,* 709 F.2d 160, 164 (2d Cir.1983) (trial counsel's failure to disclose his unlicensed status amounted to concealing criminal conduct). In marked contrast, the inherent risk of harmful conflict here was not so great that a defendant faced with such circumstances necessarily suffers an "[a]ctual or constructive denial of the assistance of counsel altogether." *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. There is always a possibility when a third party with an arguable stake in the outcome holds the purse strings that a lawyer might place his own proprietary interest above those of his client. But the inflexibility of a *per se* rule would be unjust and unworkable. We think the best approach is to conduct a particularized inquiry in each case to see whether a conflict has improperly tainted the proceedings.

■ We follow that tack here. On the facts before us, we can discern no real conflict that infected the quality of his lawyer's representation. We presume, until it is shown otherwise, that a lawyer ordinarily "will subordinate his pecuniary interests and honor his primary professional responsibility to his clients." *Bucuvalas,* 98 F.3d at 656 (quoting *United States v. DiCarlo,* 575 F.2d

952, 957 (1st Cir.1978)); *see United States v. O'Neil,* 118 F.3d 65, 71 (2d Cir.1997) (rejecting claim that fee dispute posed conflict of interest), *cert. denied,* —— U.S. ——, 118 S.Ct. 728, 139 L.Ed.2d 666 (1998). By the same token, that a possible co-perpetrator pays a defendant's legal fees does not, without more, demonstrate that a real conflict tainted the representation he or she received. *See, e.g., Bucuvalas,* 98 F.3d at 656–57 (payment of fees by codefendants did not give rise to actual conflict).

It must be emphasized that Familia does not contend that his attorney failed to pursue an alternative strategy of placing the blame on Bonifacio (he did advance it), but that he did not pursue it *aggressively enough* for fear of alienating Bonifacio. Because the defense actually was presented at trial, Familia faces an uphill battle to show that an improper economic motive dampened his lawyer's ardor.

When we examine the record closely, the claim disintegrates completely. The unrebutted testimony of Cicilline at the hearing was that Bonifacio never placed any restrictions on the representation to be provided Familia. There is no evidence that Bonifacio used the outstanding debt as leverage to influence the course of the defense. Bonifacio never promised full payment only if Cicilline torpedoed his brother's defense. Nor did Bonifacio attempt to dissuade Cicilline from arguing that the cocaine belonged to him, not Familia, by threatening to withhold payment. Defendant therefore has failed to demonstrate that his attorney "actively represented conflicting interests." *Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708.

The final and conclusive blow to Familia's claim is that his lawyer, in fact, implemented the blame-the-brother strategy.[5] Cicilline elicited from a police detective on cross-examination not only that Bonifacio was a suspected drug dealer, but that he had been arrested for selling cocaine. He presented evidence from Familia's landlady that Bonifacio had access to the apartment. She testi-

---

5. Familia makes much of our observation in passing on direct appeal that the then-record "suggest[ed]" that his counsel's efforts in furtherance of this defense were "fainthearted." *Fami-*

*lia,* 1994 WL 390142, at *2. But we did not have the benefit of any findings by the district court or a full record, and hence, are not now bound by our prior comment.

fied that she had seen Bonifacio in Familia's apartment on several occasions and that she was aware that he had a key to the apartment. Finally, Cicilline reminded the jury in his closing argument that Bonifacio was a known cocaine dealer and frequently stayed at the apartment. Given Cicilline's efforts to suggest an alternative version of the facts, Familia has failed to show that his lawyer's conduct was "actually affected" by the alleged conflict of interest. *See, e.g., United States v. Carbone,* 880 F.2d 1500, 1501 (1st Cir.1989) (rejecting claim where nothing in record showed that purported conflict negatively affected counsel's cross-examination).

■ Familia quarrels with several of his counsel's decisions regarding trial strategy,[6] arguing that they reveal a deliberate effort to protect Bonifacio. We address only three of the alleged lapses by his lawyer: the decision not to call Bonifacio to the stand, the failure to elicit from Familia himself that Bonifacio owned the drugs recovered from Familia's bedroom, and the decision not to highlight the physical similarities between Bonifacio and the drug dealer described in a police affidavit used to secure the search warrant.

Although defendant insists that his lawyer should have called Bonifacio to the stand, he offers no reason for believing that Bonifacio would have testified at all, much less that he would have accepted full responsibility for stashing the drugs in Familia's bedroom without his knowledge. To call Bonifacio would hardly have been a plausible alternative tactic. Additionally, the district court accepted Cicilline's explanation that he did not subpoena Bonifacio because he believed that Bonifacio would likely have asserted the Fifth Amendment privilege against self-incrimination. The court did not err in finding that a non-conflict motive informed trial counsel's refusal to subpoena Bonifacio. *See, e.g., United States v. Garcia–Rosa,* 876 F.2d 209, 231 (1st Cir.1989) (rejecting claim where defendant failed to show that lawyer's decision not to call witness was due to purported conflict).

Likewise, that defense counsel opted not to ask Familia directly who he believed owned the cocaine discovered in his apartment is not indicative of a conflict of interest. The decision by Cicilline not to ask the question appears to have been sound trial strategy. If Familia had acknowledged that Bonifacio owned the drugs, he would have made a tacit admission that he knew the drugs were in his apartment, permitting the jury to find that he constructively possessed the cocaine. Moreover, Familia himself seemed reluctant to point the finger at his brother. In response to the government's question on cross-examination as to who he claimed to be the true owner of the drugs, he answered, somewhat vaguely, that Bonifacio was the only one who he knew was involved in drugs in the past, but that he was not aware that Bonifacio was still mixed up with drugs. *See Familia,* 1994 WL 390142, at *2 n. 3.

Finally, defendant faults his lawyer for not emphasizing at trial that the individual described in the police affidavit (referred to as "Juan") as having sold cocaine to a government informant matched the description of Bonifacio. But doing so would have highlighted, to Familia's detriment, that an informant apparently purchased cocaine from "Juan" on three separate occasions, from Familia's apartment, from Familia's van, and from the vehicle registered to Familia's girlfriend. Pointing out the similarities between Bonifacio and "Juan" may have tended to show that the informant did not actually buy *those* drugs from Familia, but at the risk of bolstering the case for conspiracy against Familia.

None of these strategic choices, alone or in combination, demonstrate that Cicilline's advocacy was compromised by his desire to be fully compensated for his work. At most, they show an effort to walk a fine line by showing that Familia was not aware of the drugs and that Bonifacio may have hidden them in Familia's bedroom to divert suspicion from himself. To pursue this defense even more vigorously, however, was fraught with danger. Familia's attorney would have

---

6. Defendant no longer presses his argument that his lawyer's performance at trial as a whole fell below the level of reasonable competence so as to violate the Sixth Amendment. Accordingly, we do not address it.

run the risk of accentuating damaging evidence or providing the jury with a basis for finding that Familia knew the cocaine belonged to his brother and that Familia knowingly possessed it.

Defendant has failed to demonstrate that an actual conflict influenced his attorney's trial decisions. *See Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708 (mere "possibility of conflict is insufficient to impugn a criminal conviction"). We do not discount the possibility that in a rare case a lawyer's financial self-interest might be so corrupting as to compel him or her to intentionally refuse to zealously pursue a certain line of defense. But we are satisfied that did not happen here.

*Affirmed.*