**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-6**

THOMAS TRESHAWN IVEY,

              Petitioner - Appellant,

      v.

JON OZMINT, Commissioner, South Carolina Department of
Corrections,

              Respondent - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill. G. Ross Anderson, Jr., District
Judge. (0:07-cv-04024-GRA-BM)

Argued: October 29, 2008      Decided: December 17, 2008

Before NIEMEYER, TRAXLER, and AGEE, Circuit Judges.

Affirmed by unpublished opinion. Judge Agee wrote the opinion,
in which Judge Niemeyer and Judge Traxler concurred.

**ARGUED:** William Harry Ehlies, II, Greenville, South Carolina,
for Appellant. Donald John Zelenka, SOUTH CAROLINA ATTORNEY
GENERAL'S OFFICE, Columbia, South Carolina, for Appellee. **ON
BRIEF:** Robert E. Lominack, Columbia, South Carolina, for
Appellant. Henry D. McMaster, Attorney General, John W.
McIntosh, Chief Deputy Attorney General, SOUTH CAROLINA ATTORNEY
GENERAL'S OFFICE, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

Thomas Treshawn Ivey, convicted of murder and sentenced to death by the State of South Carolina, appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Because Ivey failed to rebut by clear and convincing evidence the presumption of correctness due the state court's factual findings that a disputed juror was qualified to be empanelled, and that his trial counsel had no actual conflict of interest, and because the state court's determination that Ivey's appellate counsel was not ineffective was not an unreasonable application of clearly established Federal law, as determined by the Supreme Court, we affirm the judgment of the district court dismissing the petition with prejudice.

I.

A.

In January 1993, Ivey and Vincent Neumon escaped from jail in Alabama, stole a vehicle, and drove to Neumon's hometown of Columbia, South Carolina. They then abducted Robert Montgomery in his minivan and, according to Neumon, Ivey later shot Montgomery to death. They subsequently drove to Atlanta with Patricia Perkins, where they stole another car. The trio then drove to a mall in Orangeburg, South Carolina, where Perkins and Neumon aroused suspicion by attempting to buy several hundred

2

dollars of merchandise with checks and identification taken from the latest stolen car. During a confrontation with Sergeant Thomas Harrison, an Orangeburg police officer, Ivey shot Harrison to death.

Neumon subsequently confessed to his role in these crimes and entered into a plea agreement requiring him to testify against Ivey. The Harrison case was prosecuted first and Ivey was found guilty of Harrison's murder and sentenced to death. Neumon testified in both the guilt and penalty phases of that trial. Ivey was subsequently prosecuted for Montgomery's kidnapping, robbery, and murder. In July 1995, he was convicted of these offenses and again sentenced to death.

B.

Kawiana Young was a member of the venire for the Montgomery trial. During voir dire, Young stated at times that she would always vote to impose the death penalty upon a defendant convicted of murder. However, during other portions of her voir dire, Young stated that she would keep an open mind, listen to both sides, and determine the best outcome for that particular case. Ivey moved to strike Young for cause but the state trial court found "she's a qualified juror given the totality of her responses." (J.A. 41-61.)

3

## C.

Although he had already testified against Ivey in the guilt and sentencing phases of the Harrison trial and the guilt phase of the Montgomery trial, Neumon refused to testify during the sentencing phase of the Montgomery trial. The trial court granted the prosecution's motion to call Neumon as a court's witness. Neumon continued to refuse to testify, whereupon the court cited him for contempt, declared him an unavailable witness, and allowed the prosecution to read portions of his testimony from the Harrison trial. Ivey objected that reading Neumon's testimony from the Harrison trial would prevent Ivey from cross-examining him--that his cross-examination might be substantially different than that in the Harrison trial and that this process was prejudicial. The trial court overruled the objection and Neumon's testimony from the Harrison trial was read into the record in the sentencing phase of the Montgomery trial.

## D.

On direct appeal to the Supreme Court of South Carolina for his convictions and death sentence in the Montgomery trial, Ivey was represented by Joseph Savitz, deputy chief attorney in the state's Office of Appellate Defense. Savitz argued, inter alia, that juror Young should not have been seated and that the trial

4

court unduly influenced the jury by calling Neumon as a court's witness.  Savitz did not raise a Confrontation Clause challenge to the admission of Neumon's testimony from the Harrison trial. In South Carolina v. Ivey, 502 S.E.2d 92, 95 (S.C. 1998), cert. denied, 525 U.S. 1075 (1999), the Supreme Court of South Carolina affirmed Ivey's convictions and death sentence from the Montgomery trial.

E.

In the Montgomery trial, Ivey was represented by Doyet "Jack" Early, court-appointed counsel, and Michael Culler, a public defender.  In 2001, while pursuing his state collateral review, Ivey discovered that Culler had been appointed to represent Perkins in proceedings related to the earlier Harrison trial.  However, Culler had been permitted to withdraw from representing Perkins based on a letter he wrote to the trial court stating that he had a "conflict of interest" because "Officer Tom Harrison, who was killed in this incident, was a personal friend."  (J.A. 310.)  When Ivey then raised the issue of Culler's conflict of interest during trial in the state collateral proceeding, Culler confirmed that he had written the letter but denied any personal relationship with Harrison or that any conflict had, in fact, existed.  Culler testified that his relationship with Harrison was merely professional and

5

tangential, that the letter was inaccurate, and that he had no explanation for how it had come to be written. In addition, Early testified that "Culler never acted less than zealous in Ivey's defense and he appeared to be absolutely interested in saving Ivey's life." (J.A. 481.)

F.

Among the grounds for relief raised in his petition for state collateral review, Ivey alleged (1) that Culler's recently discovered withdrawal from representing Perkins reflected an actual conflict of interest that deprived Ivey of effective assistance of trial counsel, and (2) that Savitz deprived him of effective assistance of appellate counsel by failing to challenge Young's inclusion on the jury and failing to challenge the admission of Neumon's testimony from the Harrison trial on Confrontation Clause grounds.

After comparing the contents of Culler's withdrawal letter with Culler and Early's testimony, the state court found that the letter's contents were factually inaccurate, that Culler "had no personal relationship with Officer Harrison," and "no conflict of interest existed" in Culler's representation of Ivey. (J.A. 482.) The state court also determined that Savitz had not been ineffective because the use of Neumon's prior testimony from the Harrison trial did not violate the

6

Confrontation Clause.  Finally, the court ruled that Ivey did not prove that Savitz had been ineffective for failing to challenge Young's inclusion on the jury because Savitz had raised that challenge on appeal.  Accordingly, the state court denied Ivey's petition for post-conviction collateral relief.

In a federal habeas petition in the district court, Ivey renewed his claims that Culler had an actual conflict of interest that deprived Ivey of effective assistance of counsel at trial and that Savitz's failure to challenge Neumon's testimony on Confrontation Clause grounds deprived him of effective assistance of counsel on appeal.  Ivey also challenged on the merits the trial court's inclusion of Young on the jury.  The district court denied Ivey's petition.  Ivey timely filed a notice of appeal and the district court granted a certificate of appealability pursuant to 28 U.S.C. § 2253.

II.

Ivey contends the district court erred in denying his § 2254 petition because (1) Young's responses to questions during voir dire show that she was not impartial about the application of the death penalty, (2) Culler's letter requesting withdrawal from representation of Patricia Perkins demonstrates that Culler had an actual conflict of interest adversely affecting his performance at trial, and (3) Savitz's failure to raise a

7

Confrontation Clause challenge to the use of Neumon's prior testimony constituted ineffective assistance of appellate counsel.

This Court reviews the denial of a § 2254 petition de novo, applying the same standards applicable in the district court. Jackson v. Johnson, 523 F.3d 273, 276 (4th Cir. 2008). "An application for a writ of habeas corpus . . . shall not be granted" on any claim adjudicated in state proceedings unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2000). When assessing whether the state court's determination of facts is unreasonable, we presume those determinations are correct unless the applicant rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (2000); Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).[1]

---

[1] Ivey contends that "some tension appears to exist between § 2254(e)(1), under which state court factual findings are presumed to be correct, and § 2254(d)(2), which can only be read as requiring federal habeas courts to look beneath a state court's factual findings to assess their reasonableness in light of the record that was before the state court." (Br. Appellant 15.) Ivey argues that the district court should have undertaken (Continued)

A.

Ivey contends that Young's responses to questioning during voir dire established that she believed death to be the only appropriate sentence for a person convicted of murder. Because this issue was considered during Ivey's direct appeal,[2] it "was adjudicated on the merits in State court proceedings" for the purposes of § 2254(d).

The Sixth Amendment guarantees the accused a right to trial by an impartial jury, Fullwood v. Lee, 290 F.3d 663, 677 (4th

the latter approach in his case and determined de novo whether the state court's factual findings are reasonable.

A similar argument was made by the applicant in Lenz. In that case, this Court, relying in part on Miller-El v. Dretke, 545 U.S. 231 (2005), held that a state court's factual findings are presumed to be sound in a § 2254(d)(2) review for reasonableness unless rebutted by clear and convincing evidence as required by § 2254(e)(1). 444 F.3d at 300-01. Our precedent in Lenz, which the district court applied below, controls here. See, e.g., McMellon v. United States, 387 F.3d 329, 334 (4th Cir 2004) (restating the well-established rule that one panel of this Court may not overrule another).

[2] Because Ivey raised the issue of Young's impartiality on the merits at trial and in the state supreme court on direct appeal, his failure to present that issue in his state habeas petition does not preclude our consideration of the issue here. See Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("A state habeas petitioner is generally barred from obtaining federal habeas relief unless the prisoner has presented his or her claims through one 'complete round of the State's established appellate review process.'" (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

Cir. 2002), which precludes the qualification of a juror predisposed in all cases to impose the death penalty:

> A juror who will automatically vote for the death penalty in every case . . . has already formed an opinion on the merits[;] the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant to such a juror. . . . If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence.

Morgan v. Illinois, 504 U.S. 719, 729 (1992).

However, the question of Young's impartiality is a question of fact and the state court's determination of that issue is entitled to the § 2254(e)(1) statutory presumption of correctness, see Wainwright v. Witt, 469 U.S. 412, 429 (1985), which Ivey has not overcome by clear and convincing evidence. Ivey does nothing more than point to that portion of Young's voir dire, already considered by the trial court, where she stated a preference for the death penalty. However, Ivey's argument ignores the totality of Young's voir dire testimony, particularly those portions where she indicated she would obey the court's instructions, "could vote for a life sentence," and would consider all the evidence during the sentencing phase to arrive at what was "appropriate, given the circumstances of a particular case." (J.A. 48.) Accordingly, the state courts' determination that Young was a qualified juror was not "an unreasonable determination of the facts in light of the evidence

10

presented."  Thus, we find no error in the district court's denial of Ivey's petition on this ground.[3]

### B.

Ivey also contends that Culler's letter requesting withdrawal from representation of Perkins in the Harrison trial proves an actual conflict of interest on the part of his trial counsel, which deprived Ivey of the effective assistance of counsel.  Because this issue was considered during Ivey's state habeas review, it "was adjudicated on the merits in State court proceedings" for the purposes of § 2254(d).

> The Sixth Amendment guarantees an accused the right to effective assistance of counsel, see Strickland v. Washington, [466 U.S. 668 (1984)], and an essential aspect of this right is a lawyer unhindered by conflicts of interest.  In general, to prevail on an ineffective assistance claim, a petitioner must establish (1) that his lawyer's performance was deficient by showing that his performance fell below an objectively reasonable standard, and (2) that his deficient performance prejudiced the petitioner's case.
> We have recognized that, as a general proposition, the effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest,

---

[3] Because we conclude that the state court's determination, based upon the totality of the voir dire testimony, was not an unreasonable determination of the facts in light of the evidence presented, we need not consider Ivey's additional claim that the district court erred, under Snyder v. Louisiana, 128 S. Ct. 1203 (2008), in relying on the trial court's ability to observe the juror's demeanor.

and a breach of these basic duties can lead to ineffective representation. When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in Cuyler v. Sullivan, [446 U.S. 335 (1980)], instead of that articulated in Strickland. To establish that a conflict of interest resulted in ineffective assistance, more than a mere possibility of a conflict must be shown. The petitioner must show (1) that his lawyer was under an actual conflict of interest and (2) that this conflict adversely affected his lawyer's performance. If the petitioner can show an actual conflict, and that it adversely affected his lawyer's performance, prejudice is presumed and there is no need to demonstrate a reasonable probability that, but for the lawyer's conflict of interest, the trial or sentencing outcome would have been different. [A]n adverse effect is not presumed from the existence of an actual conflict of interest.

United States v. Nicholson, 475 F.3d 241, 248-249 (4th Cir. 2007) (internal quotation marks, alterations, and citations omitted).

"The question whether a conflict of interest impermissibly tainted an attorney's performance is a mixed question of law and fact . . . that calls for 'the application of legal principles to the historical facts of [a given] case.'" Familia-Consoro v. United States, 160 F.3d 761, 764 (1st Cir. 1998) (quoting Cuyler, 446 U.S. at 342). Nevertheless, the state habeas court's findings of those historical facts are entitled to the statutory presumption of correctness, Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999), which Ivey has again failed to overcome by clear and convincing evidence. Ivey has done little

12

more than point to Culler's letter, already determined by the state habeas court not to have created a conflict of interest because its contents were inaccurate. On that basis, Ivey has fallen far short of rebutting by clear and convincing evidence the state court's determination that Culler had no personal relationship with Harrison, and therefore no actual conflict of interest. The state habeas court's determination was thus not "an unreasonable determination of the facts in light of the evidence presented." Accordingly, we find no error in the district court's denial of Ivey's petition on ground of conflict of interest by Culler.

## C.

Ivey further contends that Savitz's failure to challenge the admission of Neumon's prior testimony on Confrontation Clause grounds constituted ineffective assistance of appellate counsel. Because this issue was considered during Ivey's state habeas review, it "was adjudicated on the merits in State court proceedings" for the purposes of § 2254(d).

> . . . . Th[e] right to effective assistance of counsel extends to require such assistance on direct appeal of a criminal conviction.
> In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that

13

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
>
> In applying this test to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal. Counsel is not obligated to assert all nonfrivolous issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (internal quotation marks, alterations, and citations omitted).

The state habeas court determined that the Confrontation Clause jurisprudence flowing from Ohio v. Roberts, 448 U.S. 56 (1980), applicable at the time of Ivey's appeal,[4] would not have barred the use of Neumon's prior testimony. For that reason, the state court concluded that Ivey could not meet the second prong of the ineffectiveness analysis because the results of his direct appeal would not have been different even if Savitz had raised the issue.[5]

---

[4] The state court correctly noted that Crawford v. Washington, 541 U.S. 36 (2004), does not apply retroactively and was not applicable during the Montgomery trial. See Whorton v. Bockting, 549 U.S. 406, ___, 127 S. Ct. 1173, 1184 (2007).

[5] The state habeas court also found that the Confrontation Clause issue had not been preserved for appeal as a matter of state law. Because we dispose of this issue under 28 U.S.C. 2254(d)(1), we need not consider the state's argument that Ivey procedurally defaulted habeas review of this claim.

14

In Roberts, the Supreme Court stated that the Confrontation Clause was not offended when the prior testimony of an unavailable witness was admitted with "indicia of reliability" allowing the fact-finder to evaluate the truth of the prior statement. 448 U.S. at 65-66. The Supreme Court ultimately held that where "there was an adequate opportunity to cross-examine [the witness], and counsel . . . availed himself of that opportunity, the transcript . . . bore sufficient indicia of reliability and afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement." Id. at 73 (internal quotation marks omitted). Roberts therefore did not bar Neumon's prior testimony from the Harrison trial, where Neumon had been available for and subjected to cross-examination by Ivey in that proceeding.[6] [7] Consequently, Ivey's claim does not meet the requirements of § 2254(d)(1).

---

[6] The fact that Ivey had different counsel in the Harrison trial is immaterial. See id. at 72 ("Nor does it matter that . . . respondent had a different lawyer . . . . Indeed, if we were to accept this suggestion . . . a defendant could" evade the rule merely by changing counsel.).

[7] The Roberts Court also stated that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." Id. at 66. Clinging to this statement, Ivey argues that Neumon's testimony was improperly admitted based on state evidentiary rules proscribing hearsay. Because our review is limited to "clearly established Federal law" and because Roberts supports the use of Neumon's testimony, we do not consider this argument.

The state court's determination that Savitz was not ineffective because the outcome of Ivey's direct appeal would not have been different had Savitz raised the issue was not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  Thus, we find no error in the district court's denial of Ivey's petition on this ground.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>