# United States Court of Appeals
## For the First Circuit

---

No. 01-1187

FRANCISCO REYES-VEJERANO,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

---

Before

Torruella, Circuit Judge,

Kravitch,[*] Senior Circuit Judge,

and Lynch, Circuit Judge.

---

Linda Backiel and Rafael F. Castro-Lang for appellant.

Irene C. Feldman, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco and Thomas F. Klumper, Assistant United States Attorneys, were on brief for appellee.

---

[*]    Of the Eleventh Circuit, sitting by designation.

**LYNCH, <u>Circuit Judge</u>**.  Francisco Reyes-Vejerano was convicted by a jury in 1994 of five counts of conspiracy to possess heroin with intent to distribute.  Reyes-Vejerano, a real estate broker, was sentenced to more than 15 years of imprisonment and fined $50,000.

His conviction was affirmed in an unpublished opinion. <u>United States</u> v. <u>Jimenez-Rodriguez</u>, Nos. 94-1968, 94-2072, 1995 WL 709639 (1st Cir. Dec. 1, 1995).  He later brought a similarly unsuccessful petition under 18 U.S.C. § 2255 in the district court.  <u>Reyes-Vejerano</u> v. <u>United States</u>, 117 F. Supp. 2d 103 (D.P.R. 2000).  The district court did issue a certificate of appealability under 28 U.S.C. § 2253(c)(2), and so we face on this appeal the question whether the performance of his trial counsel, Luis Rafael Rivera, was constitutionally deficient.

The significant questions in this case are those arising from Reyes-Vejerano's claim that Rivera's advice and strategy were motivated by interests that Reyes-Vejerano says diverged from his own in two ways.  The first claim is that Rivera was himself the subject of a DEA drug investigation

-3-

related to another client of his, Gustavo Delgado-Valencia, and so had every incentive not to irritate the government. The second claim is that Rivera faced a conflict because he represented four other people in the Delgado-Valencia group who were charged with operating a large-scale drug trafficking enterprise. A case was pending against at least one member of this group when Reyes-Vejerano himself was indicted. These conflicts, Reyes-Vejerano argues, began with Rivera's representation of Reyes-Vejerano in civil forfeiture proceedings that were pending against Reyes-Vejerano's property from the Delgado-Valencia group criminal case.

Reyes-Vejerano advances another set of ineffective assistance claims based on Rivera's purported failures to perform certain pretrial investigation, to secure certain witnesses, and to move for a continuance in order to obtain the testimony of a codefendant, as well as a claim that the district court erred in restricting discovery and refusing to hear certain evidence related to Reyes-Vejerano's theories of ineffective assistance. We rest our rejection of these other contentions on the district court's opinion, 1st Cir. R. 27(c),

-4-

and confine our discussion to the allegations of conflict of interest on the present record.[1]

I.

Where an ineffective assistance claim is premised on counsel's alleged conflict of interest, we review the ultimate issue de novo, but defer to the district court's subsidiary fact findings unless they are clearly erroneous. Familia-Consoro v. United States, 160 F.3d 761, 764-65 (1st Cir. 1998).

The district court treated these allegations seriously, holding a two-day evidentiary hearing and reviewing in camera the DEA reports on which the claim was premised that counsel was himself under investigation. This was the court's first opportunity to reach these issues, as there were no objections at trial from either Reyes-Vejerano or Rivera. In this regard, we note that Reyes-Vejerano was well aware of the multiple representation and he was obviously aware that there had been a DEA investigation focused on the Delgado-Valencia group composed of Rivera's clients. Thus, this case does not involve any claim

---

[1] The district court did not address the discovery-based claims in its written opinion. We have reviewed these questions as well and found no error.

about the procedures used by the district court or the district court's failure to determine whether there was a conflict. Cf. Wood v. Georgia, 450 U.S. 261, 272 & n.18 (1981) (placing a "duty to inquire" on a trial court when a conflict of interest is "apparent in the record"); Holloway v. Arkansas, 435 U.S. 475, 484 (1978) (requiring a trial court faced with a timely objection to joint representation "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel").

A defendant who raises no objection at trial must demonstrate in his § 2255 petition that an actual conflict of interest adversely affected the adequacy of his representation. Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980); Familia-Consoro, 160 F.3d at 764. That proof of actual conflict (at least in situations where it is not obvious) has two components, each of which the defendant must show: "(1) the attorney could have pursued a plausible alternative defense strategy and (2) the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests." Familia-Consoro, 160 F.3d at 764; see also Brien v. United States, 695 F.2d 10, 15 (1st Cir. 1982) (adopting this test).

-6-

Reyes-Vejerano has satisfied the first part of this test. It was a plausible (though likely unwise) alternative defense strategy for him to take the stand and testify he was innocent. The body of this opinion therefore deals with the second part.

II.

A.  <u>Allegations that Counsel was Under Investigation</u>

Reyes-Vejerano says that Rivera was mentioned in several DEA investigative reports and that this means Rivera was under investigation. He extrapolates from this that Rivera knew of the investigation and, therefore, faced an incentive not to be too aggressive in conducting Reyes-Vejerano's defense.

The district court reviewed in camera the DEA reports concerning an investigation into international cocaine smuggling on which this claim is based. This court has reviewed those sealed documents as well.[2] Although the district court stated at the hearing that there was no investigation, its written opinion made no express finding on the subject. We will assume for purposes of this appeal that Rivera was indeed investigated

_____

[2]    We have also taken judicial notice of the materials from the district court pleadings in the original case that Reyes-Vejerano has submitted to this court.

by the DEA concerning his involvement in the Delgado-Valencia operation.

The district court found that Rivera did not know he was the subject of an investigation based upon Rivera's testimony at the evidentiary hearing. He testified that if he was under investigation he was unaware of it. He was aware he had a contentious relationship and had exchanged some heated words with both a prosecutor and a DEA agent. He once told the prosecutor that if the prosecutor thought he was obstructing justice, the prosecutor should indict him. He also admitted he might well have said the government was out to get him. The district court's finding that Rivera did not know of any investigation was not clearly erroneous. The record does, however, clearly show at least some thought on Rivera's part -- not rising to the level of certain knowledge -- that the government might suspect him.

The district court also found that no conflict of interest motivated Rivera's advice to Reyes-Vejerano that he not testify. At the evidentiary hearing, Rivera said he gave the advice for a number of reasons. Reyes-Vejerano had close personal relationships with several people -- also clients of

-8-

Rivera -- charged with and convicted of drug trafficking. Indeed, Reyes-Vejerano had put up bail for some of them. Further, Reyes-Vejerano had rented out space below his own office to a video store that the government later proved was used in drug trafficking. He had also been involved in a real estate transaction with Delgado-Valencia. Rivera testified that he thought it too risky to open the door to the government's use of this potentially prejudicial evidence. He also feared that the jury would conclude from Reyes-Vejerano's accent that he was from Colombia, the source country for the drugs. Rivera's last concern was that Reyes-Vejerano was a man of immense wealth and the jury might conclude his money came from drug dealing. Finally, Rivera testified that it was ultimately Reyes-Vejerano's choice, free from coercion, not to testify.[3]

---

[3] The district court found that Rivera did not coercively prevent Reyes-Vejerano from testifying. It thus credited Rivera over Reyes-Vejerano, who testified that he insisted on testifying but that Rivera would not permit him to do so, and that had he known the decision was his, he would have testified. We discount the relevance of this finding because defendants have the right to receive independent advice from their lawyers unburdened by an actual conflict of interest on the part of counsel. Every defendant is, after all, entitled to "representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). Had Rivera's conduct been caused by an actual conflict of interest, we would not require

At the hearing before the district court, Reyes-Vejerano's current counsel argued that these reasons did not hold up. Because Reyes-Vejerano was not indicted in the cases involving Gustavo and Jules Delgado-Valencia, Jairo Parra, and Ismenia Perdomo, any cross-examination regarding them would arguably be irrelevant, or inadmissible as collateral evidence, or both. If the evidence came in, Reyes-Vejerano maintained that he had innocent explanations for all suspicious links. Moreover, as Rivera admitted at the hearing, Reyes-Vejerano was articulate and presentable and would not have made a bad witness. Reyes-Vejerano does not repeat these arguments on appeal, possibly because they tend to undermine his second claim that Rivera kept him off the stand in the interest of the other clients. Instead, he focuses on his assertion that Rivera faced a substantial incentive to curry favor with the agents and prosecutors handling Reyes-Vejerano's case.

The argument is not frivolous that a defense lawyer within the sights of a targeted criminal prosecution may find his personal interests at odds with his duty to a client.

---

that it rise to the level of coercion to sustain Reyes-Vejerano's claim.

> A lawyer in these circumstance[s], while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client.

Armienti v. United States, 234 F.3d 820, 825 (2d Cir. 2000). While recognizing that a defense lawyer afraid of retaliation might lack vigor, see Thompkins v. Cohen, 965 F.2d 330, 332 (7th Cir. 1992), the Seventh Circuit has rejected any per se rule of conflict. See United States v. Montana, 199 F.3d 947, 949 (7th Cir. 1999); United States v. Hubbard, 22 F.3d 1410, 1418 (7th Cir. 1994). We, too, adopt a rule that a defendant has not shown a fatal conflict by showing only that his lawyer was under investigation and that the lawyer had some awareness of an investigation.

The defendant must still meet the Cuyler standard of actual conflict and adverse effect: the defendant must show some causal relationship between the lawyer's awareness of the investigation and the alleged deficiency in representation. Here it is unclear whether, but arguable that, counsel was being investigated and that counsel had some sense the prosecutors were "out to get him," even if he did not know in an absolute

-11-

sense that he was being investigated. But there is nothing to show counsel pulled any of his punches. The defense throughout was actual innocence, and no effort was made, on the evidence presented, to force Reyes-Verejano into an unwelcome plea bargain. Indeed, even were counsel under investigation about his relationship with the Delgado-Valencia operation, Reyes-Vejerano has offered no reason to think Rivera's personal interests diverged from those of Reyes-Vejerano other than the general and unspecified theory that Rivera must have wanted to please the government.

This is a far cry from the situation of a government witness at trial suddenly accusing defense counsel of involvement in drug trafficking. Cf. United States v. Fulton, 5 F.3d 605 (2d Cir. 1993) (holding that such a situation presented a conflict too great for the defendant to waive). Nor is it a case of defense counsel being indicted during his representation of a client by the same office prosecuting his client, and then entering a plea of guilty after negotiations with that office. Cf. United States v. DeFalco, 644 F.2d 132, 136-37 (3d Cir. 1980) (en banc) (plurality opinion) (holding that such a situation presented a conflict possibly subject to

-12-

waiver).  Rather, we are left with sheer speculation, and that is not enough.  See United States v. Canessa, 644 F.2d 61, 63-64 (1st Cir. 1981).

B.  Counsel's Representation of Other Defendants

Reyes-Vejerano next says that the reason Rivera advised Reyes-Vejerano not to testify was that Rivera feared Reyes-Vejerano would be cross-examined about Gustavo and Jules Delgado-Valencia, Jairo Parra, and Ismenia Perdomo, all of whom Rivera represented, and that the cross-examination would hurt these other clients.

The government's initial argument is that there is no connection at all between the two cases and so there could be no conflict created.  Some background is needed.  Reyes-Vejerano initially retained Rivera to represent him in civil forfeiture proceedings in which the United States alleged that Reyes-Vejerano was laundering money for the Gustavo Delgado-Valencia drug operation.[4]  His defense against forfeiture was successful.

---

[4]     Reyes-Vejerano argues that Rivera had a duty to Reyes-Vejerano as an innocent owner to show he was not a part of the Delgado-Valencia criminal enterprise, and that counsel's appearance for Reyes-Vejerano "could only signal to the United States that Reyes, too, was part of the enterprise."  Any such signal followed from Reyes-Vejerano's knowing choice of counsel

-13-

For this and other reasons, we reject as too blithe the government's argument that there is absolutely no connection between the Delgado-Valencia drug case and this one. But Reyes-Vejerano has not shown that the connection is such as to create an actual conflict of interest.

The district court concluded that Reyes-Vejerano had shown neither that his counsel faced a conflict of interest nor that his advice was motivated by his representation of others, rather than by his obligations to Reyes-Vejerano. The subsidiary factual findings are not clearly in error, and these conclusions follow from them.

Representation of different defendants in different but related cases by one counsel may give rise to a conflict of interest. See, e.g., Horowitz v. Henderson, 514 F.2d 740 (5th Cir. 1975) (affirming a grant of habeas corpus to a petitioner whose attorney had represented a codefendant who pled guilty separately and then testified at the petitioner's trial). For example, one client may stand to gain through negotiations with prosecutors that will injure another, raising concerns of

---

and occurred in the civil forfeiture case, long before this criminal case.

loyalty; or information obtained in the representation of one client may be potentially useful to another, raising concerns of confidentiality -- particularly if the first client is a possible witness at the second client's trial. The record does not reveal, however, any specific facts that demonstrate any of these problems arising in Rivera's defense of Reyes-Vejerano.[5]

It might arouse our suspicion if Rivera, seeing some potential overlap between the two representations, had failed to disclose that representation. We observe, however, that just the opposite happened. Reyes-Vejerano retained Rivera to represent him, initially in the forfeiture action and later in the criminal action, precisely because Rivera was representing the others. We are not suggesting that Reyes-Vejerano's conduct rose to the level of a knowing and voluntary waiver of his

---

[5] Reyes-Vejerano does point out that the district court found that Rivera was motivated by the desire not to reveal Reyes-Vejerano's relationship with the Delgado-Valencia clients in advising him not to testify. In context, however, it is clear what the district court meant: Rivera's worry was not that the Delgado-Valencia clients, convicted felons, would be tainted by association with Reyes-Vejerano, a purportedly innocent businessman, but instead the more reasonable fear that Reyes-Vejerano would be tainted by association with the Delgado-Valencia clients. This finding is therefore no evidence that Rivera's advice was motivated by anything but his professional judgment exercised on Reyes-Vejerano's behalf.

rights as to an existing conflict; the district court made no such finding and the issue was never developed.  Instead, that conduct is one factor among several that show the absence of a conflict in the first place.

III.

Because Reyes-Vejerano has not shown an actual conflict of interest on either theory, we reject that claim, and so reject his Sixth Amendment ineffective assistance of counsel claim.  The denial of the § 2255 petition is <u>affirmed</u>.

-16-