USCA1 Opinion

 

United States Court of Appeals

For the First Circuit

No. 00-1497

UNITED STATES,

Appellee,

v.

RAMON RAMIREZ-BENITEZ, a/k/a SEALED DEFENDANT 12,

a/k/a EL VIEJO, a/k/a MONCHO.

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

[Hon. Jack B. Weinstein, (1)
 U.S. Senior District Judge]

Before

 Lynch, Circuit Judge,

Campbell, Senior Circuit Judge, 

and Lipez, Circuit Judge.

 Zygmunt G. Slominski for appellant.

 Thomas F. Klumper, Assistant United States Attorney, Criminal
Division, with whom Guillermo Gil, United States Attorney, and Jorge E.
Vega-Pacheco, Assistant United States Attorney, Chief, Criminal
Division, were on brief for appellee. 

June 4, 2002

 CAMPBELL, Senior Circuit Judge. In this appeal from a
sentence following a guilty plea, Ramon Ramirez-Benitez ("Ramirez-Benitez") seeks to withdraw his plea. He contends the district court
provided him with inadequate advice. He also alleges a conflict of
interest on the part of his counsel and ineffective assistance of
counsel. Affirming, we reject the first two claims but do not reach
Ramirez-Benitez's third claim for ineffective assistance of counsel.

 Background

 In December 1998, Ramirez-Benitez, along with thirty co-conspirators, was charged in an eight count indictment with
participating in a conspiracy to distribute multi-kilograms of heroin
in Puerto Rico. The district court appointed attorney Edgardo Rivera-Rivera ("Rivera") to represent Ramirez-Benitez.

 Just prior to the scheduled trial, Ramirez-Benitez negotiated
a written plea agreement with the United States Attorney. In the
agreement, Ramirez-Benitez agreed to plead guilty to a single count of
the indictment, namely Count I, alleging his participation in a
conspiracy to possess and distribute at least one (1) kilogram of
heroin in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The
plea agreement stated at the outset that "[t]he statutory penalty as to
Count I of the indictment is a term of imprisonment of not less than
TEN (10) years and not more than life . . . ." The agreement went on
to state that the government and Ramirez-Benitez stipulated that he was
responsible for the distribution of at least three kilograms but less
than ten kilograms of heroin resulting in a base level offense of 34. 
The parties further stipulated that Ramirez-Benitez would receive a
three level downward adjustment for acceptance of responsibility and a
further "two (2) level reduction if the defendant meets the criteria of
the 'safety valve' set forth in U.S.S.G. § 5C1.2." (2) Based on a total
offense level of 29, the imprisonment range was calculated at 87 to 108
months. The agreement went on to say, however, that Ramirez-Benitez
"understands that the Court is not bound by the provisions of this
plea, including stipulations and calculations." Further, the government
reserved the right to present sentencing facts or factors material to
sentencing and to bring its version of the facts to the attention of
the Probation Office in connection with its sentence report. Included
within the plea agreement was a Statement of Facts signed by Ramirez-Benitez confirming that the facts presented were "accurate in every
respect." The plea agreement was signed for Ramirez-Benitez, both by
himself and by attorney Jorge A. Fernandez ("Fernandez"), who purported
to sign on behalf of Rivera, Ramirez-Benitez's court-appointed
attorney.

 On November 8, 1999, Ramirez-Benitez presented his change of
plea to the district court for its acceptance. At this time a co-defendant, Cecilio Ceballos, also sought acceptance of his own guilty
plea for his involvement in the same conspiracy. Ceballos was
represented by Attorney Fernandez, who had been appointed by the court
to represent him. Fernandez was the same attorney who signed Ramirez-Benitez's plea agreement for Rivera, his appointed attorney. When
Ramirez-Benitez appeared before the district judge for his change of
plea hearing, Fernandez rose to represent him. Fernandez explained to
the court that Rivera, his law partner, was too ill to attend the
hearing and had asked Fernandez to stand in for purposes of the change
of plea only. The court immediately advised Ramirez-Benitez and
Fernandez of the existence of a potential conflict of interest and
offered to appoint another attorney, see infra, for more details of the
colloquy. The court recessed to provide Ramirez-Benitez with an
opportunity to discuss the situation with Fernandez. After a brief
discussion, Ramirez-Benitez advised the court that he would continue
with the change of plea with Fernandez as his counsel. At the
conclusion of the hearing his change of plea was accepted by the court. 

 At the later sentencing hearing, Ramirez-Benitez was
represented by his court-appointed attorney Rivera. Rivera presented
no corrections nor objections to the pre-sentence report. When the
court questioned the parties regarding the applicability of the "safety
valve," the Assistant U.S. Attorney explained that the safety valve was
not available to Ramirez-Benitez on the facts of this case. Rivera
commented that he agreed "with Brother Counsel for the Government that
it [did] not apply; however, when my client executed the plea agreement
in this case, there was some provision inserted as to the possibility
of the application of the safety valve provision. However, I have
explained to my client that he does not conform to the criteria of the
safety valve." 

 Ramirez-Benitez's ineligibility for the two level "safety-valve" reduction stemmed from his alleged use of a firearm in the
offense. The use of a firearm had been implied in Count I of the
indictment, although not mentioned in the plea agreement. 
Specifically, Ramirez-Benitez was alleged in Count I to have told a co-defendant that "he had the 'tools' to 'fix that problem,' namely a
weapon to cause the debtor's death." Use of a firearm was also
asserted in the pre-sentence report. Ramirez-Benitez did not object to
the report. The sentencing court did not ask the government to
describe the facts upon which this allegation was based nor did Rivera
ever complain that a factual basis did not exist. Without the
advantage of the safety valve, Ramirez-Benitez was subject to the
mandatory minimum of ten years, and that is the sentence he received.

 Ramirez-Benitez objected to the sentence at the time it was
announced. He said he had pled guilty pursuant to a plea agreement
with a stipulated sentencing range of only 87 to 108 months. He said
that he was unaware that the specified range was dependent upon his
qualification for the safety valve. "I just want to say that I came
prepared in that an arrangement was made in English. And I was talked
about a sentence which I accepted, but I was never talked about [sic]
. . . a safety valve."

 Discussion
 
 The Rule 11 Colloquy
 

 Ramirez-Benitez contends that the district court failed
properly to advise him of the nature and consequences of his guilty
plea. He argues this error requires us to vacate his plea. Ramirez-Benitez never raised these issues below, hence our review is governed
by the plain error standard. United States v. Corporan-Cuevas, 244
F.3d 199, 202 (1st Cir. 2001); United States v. Gandia-Maysonet, 227
F.3d 1, 5 (1st Cir. 2000). The defendant's burden under the plain
error standard is a heavy one. Plain error requires not only an error
affecting substantial rights but also a finding by the court that the
error had seriously affected the fairness, integrity, or public
reputation of the judicial proceedings. United States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000).

 Ramirez-Benitez's first attack on his plea implicates one of
Rule 11's core concerns, namely that the court properly instruct the
defendant as to the nature of the charges against him. Gandia-Maysonet, 227 F.3d at 3. However, the district court's description of
the offense charged was adequate for Ramirez-Benitez to have understood
the elements of the offense. The district court read Count I of the
indictment and asked whether Ramirez-Benitez understood the charges. 
The court also explained the indictment in lay terms and asked that
Ramirez-Benitez describe his involvement.

 In cases with charges lacking in complexity, simply reading
the indictment to a defendant, as was done here, can satisfy Rule 11's
requirements. See Fed. R. Crim. P. 11 advisory committee's notes to
1974 Amendments. This was such a case. The charge against Ramirez-Benitez was not complicated; it did not contain "esoteric terms
unfamiliar to the lay mind." Mack v. United States, 635 F.2d 20, 25
(1st Cir. 1980). The terms of the indictment alone sufficed to put
Ramirez-Benitez on notice of the charge to which he was pleading
guilty. Ramirez-Benitez admitted he understood the charge and the
court found him competent to plead. Ramirez-Benitez also acknowledged
his involvement in the conspiracy stating that he was a "distributor"
of the heroin brought into Puerto Rico by a co-defendant. United States
v. Cotal-Crespo, 47 F.3d 1, 6 (1st Cir. 1995) (concluding defendant's
admission that the allegations are true is sufficient evidence that he
understood charge). As a corollary to this admission in court, the
plea agreement included a statement of facts, endorsed by Ramirez-Benitez, outlining his conduct. We find no error, let alone plain
error. United States v. Perez-Carrera, 243 F.3d 42, 43 n.2 (1st Cir.
2001).

 Ramirez-Benitez also argues that, pursuant to Rule 11(f), the
district court should have inquired into the applicability of the
safety-valve provision before accepting his guilty plea. Rule 11(f)
requires a district court to make "such inquiry as shall satisfy it
that there is a factual basis for the plea." According to the Supreme
Court, a district court judge "satisfies the requirements of Rule 11(f)
when he determine[s] 'that the conduct which the defendant admits
constitutes the offense charged in the indictment or information . . .
.'" Libretti v. United States, 516 U.S. 29, 38 (1995) (quoting
McCarthy v. United States, 394 U.S. 459, 466 (1969)). Here, the judge
explained that Ramirez-Benitez was being charged that he "intentionally
combined and cooperated and agreed, together with these other people,
to possess with the intent to distribute more than one kilogram of
heroin, and to distribute more than one kilogram of heroin." When
asked to describe his conduct, Ramirez-Benitez stated that, over the
course of the conspiracy, he distributed heroin that he received from
Jesus Ivan Saenz-Blanco, a co-defendant, in a quantity that exceeded 1
kilogram. We believe this dialogue met the requirements of Rule 11(f). 
Whether or not Ramirez-Benitez used or threatened to use a firearm, the
conduct which made him ineligible for the safety-valve, was not a
necessary part of the substantive offense.

 Ramirez-Benitez contends that he did not understand the
consequences of his plea, a contention also implicating a core concern
of Rule 11. Cotal-Crespo, 47 F.3d at 6. Ramirez-Benitez states that,
at the time of his plea, he did not understand that he could be
sentenced beyond the 87-108 months term mentioned in the plea
agreement. He further insists that he was unaware that he was
ineligible for the two level safety-valve reduction. 

 However, the plea agreement stated at the outset that the
statutory penalty for Count I was not less than ten years and not more
than life and the court asked Ramirez-Benitez expressly whether he
understood that the statutory penalty so provided. Ramirez-Benitez
replied that he understood. Further, after addressing the sentencing
range set forth in the plea agreement, including the potential
application of the safety-valve, the court inquired if Ramirez-Benitez
understood that "it's up to the Judge to decide if that is correct, and
it can go up or down, including the ten-year minimum and life
sentence." Again, Ramirez-Benitez stated he understood. Here, the
court did not provide inaccurate sentencing information. See United
States v. Bierd, 271 F.3d 15, 22 (1st Cir. 2000); United States v.
Hernandez-Wilson, 186 F.3d 1, 6 (1st Cir. 1999). This is not a case
where the district court failed to disclose a mandatory minimum, see
United States v. Lopez-Pineda, 55 F.3d 693, 695-96 (1st Cir. 1995), nor
where it incorrectly advised the defendant as to the minimum and
maximum penalties that applied in the case, see United States v. Santo,
225 F.3d 92, 99 (1st Cir. 2000). 

 The transcript makes clear that the district court informed
Ramirez-Benitez that (1) the plea agreement was not binding on the
court; and (2) that he was subject to a mandatory minimum of ten years,
the sentence he ultimately received. Any confusion of Ramirez-Benitez
about the potential length of his sentence was not the result of having
been incorrectly advised by the court during the Rule 11 plea colloquy. 
We discern no error.

 
 Counsel's Conflict of Interest
 

 Ramirez-Benitez contends that his court-appointed attorney,
Rivera, suffered from an actual conflict of interest. (3) Rivera was a law
partner of Fernandez who had been appointed by the court to represent
Ceballos, a co-defendant. Representation of co-indictees by members of
the same law firm may create a conflict of interest similar to that
when a single attorney represents two or more co-defendants. See Burger
v. Kemp, 483 U.S. 776, 783 (1986) (assuming without deciding that two
law partners are considered as one attorney). See also Fed. R. Crim.
P. 44(c) (requiring inquiry when two or more defendants "are
represented . . . by retained or assigned counsel who are associated in
the practice of law.")

 Here, the potential for an actual conflict of interest was
heightened by the fact that Rivera's partner, Fernandez, the attorney
for co-defendant Ceballos, signed Ramirez-Benitez's plea agreement and
acted on Ramirez-Benitez's behalf in place of Rivera at Ramirez-Benitez's change of plea hearing. (4) At the sentencing hearing, Rivera
used language confirming that he regarded his partner as also
representing Ramirez-Benitez. Regarding the applicability of the
safety valve provision set forth in the plea agreement, Rivera stated:

 Well your Honor, after conversing with our client, we were
under the impression at the beginning that this provision
[the safety valve] would apply. However, as I said here
before, we realize that it doesn't apply. However, we
conversed with Brother Counsel for the Government and we
will be requesting the Court to sentence our client at the
lower level of the guideline, which I believe is 31.

 

Rivera's use of "we" and the phrase "our client" suggests a belief that
his partner, Fernandez, as well as himself both represented Ramirez-Benitez. 

 Where the same attorney or associated attorneys represent co-defendants, the Federal Rules of Criminal Procedure require that the
court inquire in advance into such representation and advise each
defendant of the right to the effective assistance of counsel,
including the right to separate representation, see Fed. R. Crim. P.
44(c); Mickens, 122 S. Ct. at 1237, 1241-42 (2002). An inquiry of
this nature was carried out here. The district court promptly
identified the potential conflict when Fernandez rose to represent
Ramirez-Benitez at his change of plea hearing moments after
representing Ceballos at his change of plea hearing. The court spoke
to both Ceballos and Ramirez-Benitez. "And this attorney who stood up
for you a moment ago is partner of an attorney who represents this
defendant. Do you understand that?" To which both defendants answered
in the affirmative. "And the law considers them as the same attorney. 
Do you understand that?" Again, the defendants indicated they
understood. "Now each of you is entitled to an independent attorney,
independent of any other attorney. Do you understand?" The defendants
acknowledged their comprehension. "And the reason for that is that one
attorney might sacrifice one client for the benefit of another client. 
Do you understand?" Both Ramirez-Benitez and Ceballos responded that
they understood. "So if you wish you are entitled to a different
attorney. What do you wish to do?" At this point in the inquiry,
Ceballos replied that he wished to continue with Fernandez. Ramirez-Benitez stated that he also would continue with Fernandez. The
district court checked again: "And you understand the conflict?" The
court questioned Ramirez-Benitez further: "Do you want time to consult
another attorney? I'll be happy to appoint another attorney to consult
with you." At this point, Ramirez-Benitez said that he would like to
speak to Fernandez and the court took a brief recess. When the court
reconvened, Ramirez-Benitez was asked again whether he wanted to
continue with the change of plea hearing with Fernandez as his counsel
to which he stated "Yes."

 The district court's above inquiry appropriately met Rule
44(c)'s requirements in the circumstances here. That such an inquiry
occurred does not end our analysis, however, since as the Supreme Court
emphasizes in Mickens the primary issue is whether the record discloses
"an actual conflict of interest [that] adversely affected [defendant's]
lawyer's performance." (5)
 Mickens, 122 S. Ct. at 1244 n.5; see also
Cuyler v. Sullivan, 446 U.S. 335, 350 (1980); Mazzaferro, 865 F.2d at
455. Where such an actual conflict exists, it is unnecessary to
demonstrate specific prejudice. "[P]rejudice is presumed when counsel
is burdened by an actual conflict of interest." Strickland v.
Washington, 466 U.S. 668, 692 (1984); accord Mickens, 122 S. Ct. at
1244. To establish an actual conflict of interest, Ramirez-Benitez
must show that Rivera might plausibly have pursued an alternative
defense strategy, and that the alternative strategy was in conflict
with, or may not have been pursued because of, Rivera's other loyalties
or interests. Reyes-Vejerano v. United States, 276 F.3d 94, 97 (1st
Cir. 2002); Familia-Consoro v. United States, 160 F.3d 761, 764 (1st
Cir. 1998). In short, to establish the predicate for his
constitutional claim of ineffective assistance, Ramirez-Benitez must
show that his counsel represented interests that were in actual
conflict. Sullivan, 446 U.S. at 335, 349. 

 To meet his burden, Ramirez-Benitez contends that Rivera had
no choice but to encourage Ramirez-Benitez to plead guilty since, had
the latter gone to trial, Rivera would have been faced with the
"untenable position of having to cross-examine" Ramirez-Benitez's co-defendant and law partner's client, Ceballos. The record, however,
does not show that Ceballos would have been called as a witness or that
he would have testified adversely to Ramirez-Benitez had Ramirez-Benitez elected to go to trial rather than to plead. Ramirez-Benitez
and Ceballos played very different roles in the conspiracy. By his own
admission, Ramirez-Benitez was a "distributor" of heroin. In contrast,
Ceballos acted as a money launderer. No facts have been called to our
attention indicating that Ceballos was a significant material witness
against Ramirez-Benitez. Nor has it been shown that Ceballos or
Ramirez-Benitez needed to implicate the other so as to exonerate
himself. Ramirez-Benitez's contentions of actual conflict are,
therefore, simply speculative. He has not shown how loyalty to
Ceballos would have adversely affected his attorney's giving of
disinterested advice and representation to him. Reyes-Vejerano, 276
F.3d at 98. The mere "possibility of conflict is insufficient to
impugn a criminal conviction." Sullivan, 446 U.S. at 350.

 
 Ineffective Assistance of Counsel
 

 Apart from the purported conflict of interest, Ramirez-Benitez also charges ineffective assistance of counsel in other
respects. He contends that Rivera, his court-appointed counsel, failed
adequately to explain the plea agreement and its consequences to him;
failed to file a motion requesting the continuance of the sentencing
date after the pre-sentence report was disclosed belatedly; failed to
object to errors within the pre-sentence report; and failed to
adequately explain to him that the safety valve provision was
inapplicable, thereby ruling out the 87 to 108 month sentence discussed
in the plea agreement.

 However, the present record on direct appeal is insufficient
from which to evaluate fact-specific claims of ineffective assistance
of counsel such as these. For proper review of Ramirez-Benitez's
allegations of ineffective assistance, facts must be developed showing,
inter alia, the advice, or lack thereof, rendered by the allegedly
ineffective attorney to his client. We typically require that an
ineffective assistance claim be presented first to the district court
in a collateral proceeding. United States v. Campbell, 268 F.3d 1, 7
(1st Cir. 2001) (citing United States v. Hunnewell, 891 F.2d 955, 956
(1st Cir. 1989). This requirement allows a defendant to build a
meaningful record in the district court "cataloguing his complaints
regarding his counsel's allegedly faulty strategic choices and general
performance." Campbell, 268 F.3d at 7. Thus, we dismiss that aspect
of the appeal without prejudice to Ramirez-Benitez's right to pursue
his ineffective assistance claim in an appropriate collateral
proceeding. 

 AFFIRMED.

1. Of the District of New York, sitting by designation.

2. Section 5C1.2 provides that a court shall impose a sentence
in accordance with the applicable guidelines without regard to
a statutory minimum if the court finds that the defendant meets
the criteria in 18 U.S.C. § 3553(f)(1)-(5). Section 3553(f)(2)
requires that the defendant "did not use violence or credible
threats of violence or possess a firearm or other dangerous
weapon . . . in connection with the offense."
3. In Mickens v. Taylor, 122 S. Ct. 1237 (2002), decided after
this appeal was briefed and argued, the Court made clear that
"an actual conflict of interest" means not merely a potential
conflict but a conflict that actually affects adversely
defendant's counsel's performance in the particular case. Id.
at 1243-44 & n.5. 
4. At oral argument, the government assured this court that it
was not customary for the law partner of a court-appointed
attorney to fill in for the appointed counsel without specific
authorization by the judge as occurred here. Plainly such a
practice should be avoided unless proper safeguards are in
place. It is, of course, especially troublesome where, as here,
the partner also represented a co-defendant.
5. Whether, when and to what extent a defendant's waiver made
in the course of a Rule 44(c) inquiry can excuse an actual
adverse conflict of interest on the part of his counsel is an
issue we need not address given the absence here of any
demonstrated actual conflict, infra.