Petit v. United States        CV-02-184-M    04/17/03
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Catherine D. Petit,
      Petitioner
                                        NH Civil No. 02-184-M

     v.
                                        ME Civil No. 01-298-PH
United States of America,           Opinion No. 2003DNH071
      Respondent


**O R D E R**


By order dated July 18, 2002, the court solicited a targeted response from the government to petitioner's claim that one of her defense counsel, Attorney Beneman, had a conflict of interest arising from the fact that prosecutors threatened him, or accused him of complicity in petitioner's crimes.[1] That, she says, caused Beneman to focus on his personal interests in avoiding confrontations with the United States Attorney and facilitating

---

    [1] The government mischaracterizes the July 18, 2002, Order. Petitioner's claim was not "termed facially without merit" by the court, as the government says in its response. In fact, the Order is quite plain: "[Petitioner's] assertion seems to be facially without merit – nothing in this file indicates any such charge by the government. . . . But, on the other hand, nothing in this file conclusively establishes that petitioner's conflict allegations are meritless. The government has not responded to the discrete issue. . . ." Order, at 9-10 (emphasis added). If the court had termed the claim facially without merit, further briefing would not have been required.

his future practice in Maine, all at her expense.  In other words, she says that Beneman was less than vigorous in representing her at sentencing, because he sought to ingratiate himself with, or, at least avoid offending, the prosecutors.  The prosecutors' alleged accusation of complicity occurred after petitioner's conviction, and, therefore, could only have affected sentencing.

The government filed a response and, shortly thereafter, petitioner filed a "limited response" (document no. 7), to which the government replied (document no. 8).  And, on March 3, 2003, petitioner filed a number of pleadings, and hundreds of pages of supporting documents – some tangentially relevant to the issue the court specified for further briefing, but most are entirely irrelevant (documents 9 and 10).  The government moves to strike those motions for various reasons.

The court has considered the petitioner's filings, to the extent they plausibly relate to the specified issue.  But, otherwise, the several motions described in documents 9 and 10

are denied. The government's motion to strike (document no. 11) is denied as well.

The government, again, does not directly address petitioner's claim that prosecutors threatened Attorney Beneman – other than to say petitioner waived her conflict claim (through allegedly conflicted counsel) and that she has "offered no concrete proof that at any time Beneman was actually under investigation for anything." Government's Supplemental Response, (document no. 6, at 14) (emphasis added).

But, even assuming the prosecutors did accuse Beneman, at some point after the verdict, of complicity in petitioner's crimes (nothing in the petition or numerous documents filed, beyond petitioner's declaration, supports that assumption), the petition, pleadings, and exhibits in the file still demonstrate that petitioner is entitled to no relief on the conflict issue.

It is not apparent that petitioner plainly and clearly raised before the trial court the conflict issue that she now asserts in this proceeding. She did raise general claims of

prosecutorial misconduct of one sort or another, and the trial court addressed those issues primarily as an improper effort by petitioner to represent herself while being represented by counsel (she raised those issues in pro se pleadings, without counsels' participation).  She also expressed "concerns" of a general nature, but never pointed to or described an actual threat or accusation by prosecutors against Beneman.

Petitioner apparently had a letter sent in her name to the trial judge that suggested Attorney Beneman might have been "compromised."  She questioned whether "Mr. Beneman in any way has been compromised based on these issues that have surfaced" – by which she meant the prosecutors' apparent objections to her son's soliciting letters of support from her fraud victims for use at sentencing (Attorney Beneman also purportedly sent a letter to one of the victims seeking sentencing support for petitioner, and petitioner implies that prosecutors were unhappy about that as well).

As the trial judge pointed out at a May 18, 1999, hearing, Attorney Beneman had a professional obligation to disclose any

4

matters that might compromise his representation.  The trial judge expressed confidence that Beneman would do so if the need arose, and he encouraged petitioner to bring any such concerns to Beneman's attention first, before filing pleadings on her own behalf.  Petitioner did not raise the issue, even vaguely, again. Attorney Beneman did not disclose any possible "compromise." And, petitioner pointed to nothing then, and points to nothing now, that would support a claim that prosecutors threatened or accused Beneman of complicity in her crimes.  She certainly has not plausibly suggested that Beneman was under investigation regarding any criminal conduct, or that he was aware of such an investigation.

One day after the hearing before the trial court, on May 19, Attorney Beneman filed a motion to withdraw.  But the withdrawal motion was not based upon anything the prosecutors said or did; instead, Beneman expressed dissatisfaction with petitioner's own behavior, referencing her earlier letter to the judge complaining about overbearing prosecutors.  He suggested that he could no longer vigorously represent petitioner because petitioner wished him to pursue a course of conduct in her defense that Beneman was

5

professionally unwilling to pursue. Later, at a May 26, 1999, pre-sentence conference, Attorney Beneman effectively withdrew his motion. Petitioner had not directly responded to the motion to withdraw, but her co-counsel, Attorney Lawson, represented to the court that he had spoken with petitioner several times, that a misunderstanding precipitated the motion, everything had been cleared up between petitioner and her counsel (both Lawson and Beneman), and petitioner did not want Beneman to withdraw. Beneman agreed, requesting that no action be taken on his motion. If the record reveals nothing else, it reveals that petitioner was a difficult client in terms of actively seeking to participate in conducting her defense, as if representing herself, and in seeking to direct counsels' conduct of the defense.

The petition does not provide a basis for overturning either her conviction or sentence on Sixth Amendment grounds. First, the conviction was not affected at all, since the alleged conflict did not arise until after the verdict was returned. With regard to sentencing, petitioner's conflict allegation is entitled to serious consideration, because, as the court of

6

appeals for this circuit has noted, "a defense lawyer within the sights of a targeted criminal prosecution may find his personal interests at odds with his duty to a client." Reyes-Vejerano v. United States, 276 F.3d 94 (1st Cir.), cert. denied, 123 S.Ct. 458 (2002). The court of appeals has adopted a rule for such cases: "[A] defendant has not shown a fatal conflict by showing only that his lawyer was under investigation and that [his] lawyer had some awareness of an investigation." Id., at 99.

> The defendant must still meet the Cuyler [v. Sullivan, 446 U.S. 335 (1980)] standard of actual conflict and adverse effect: the defendant must show some causal relationship between the lawyer's awareness of the investigation and the alleged deficiency in representation.

Id. Here, other than petitioner's unsupported claim, nothing in the petition or supplemental filings suggests that Attorney Beneman was under investigation in connection with petitioner's extensive fraud scheme, or any other offense.

Nevertheless, even assuming a prosecutor expressed, to Beneman, the view that Beneman's effort to obtain support letters from petitioner's victims somehow made him "complicit" in the crimes of conviction, or different crimes (a pretty far-fetched

7

view), there is nothing to suggest that Attorney Beneman, or his co-counsel, Attorney Lawson, "pulled any punches" at sentencing. To the contrary, Beneman's efforts resulted in a sentence at the low end of the applicable Guideline range.  So, petitioner completely fails to meet the second part of the Cuyler test – there is no arguable deficiency in Attorney Beneman's representation on sentencing, and petitioner points to none with any degree of specificity.

Petitioner makes no plausible showing that her sentence would have been more favorable had Beneman pursued some different theory or strategy on sentencing, much less a theory or strategy inconsistent with his supposedly conflicting personal interests. Contrary to petitioner's claim, Beneman did seek to minimize the loss amounts attributable to petitioner's fraud under the Sentencing Guidelines – so he was obviously not adversely affected in that regard.  And, as the government points out, petitioner would have to point to a plausible alternative loss calculation theory (that Beneman failed to pursue because of his alleged conflict) sufficient to reduce the loss amount found by the trial judge by more than $2 Million before she could obtain

8

any relief under the Sentencing Guidelines (i.e., resentencing at the next lower offense level).

Petitioner simply does not come close to asserting facts or circumstances that would support a finding of prejudice - an adverse affect upon her sentence due to an alleged conflict of interest on Beneman's part. The sentence was consistent with the applicable Guidelines, was correctly calculated, and was less severe than it might have been due to the efforts of Attorneys Beneman and Lawson.[2] And, importantly, it would not likely have been more favorable had a different tactic or strategy been followed (at least petitioner does not suggest one, and does not suggest one that Beneman might have been reluctant to pursue).

### Conclusion

The petition, other pleadings and exhibits, and the file, do not combine to describe a plausible Sixth Amendment claim. The petitioner does not describe an actual conflict - but merely

---

[2] The trial judge determined a loss amount that was itself more than $2 Million less than that recommended in the Pre-Sentence Investigation Report prepared by the United States Probation Office.

asserts that a prosecutor threatened her counsel with a charge of complicity in her crimes which, she says, necessarily gave rise to an actual conflict on Attorney Beneman's part. The petition does not describe or disclose any causal relationship between Beneman's asserted awareness of the (alleged) prosecutorial threat and any representational deficiencies at sentencing; it does not describe any error in sentencing, much less one related to Attorney Beneman's alleged representational failures; and, it does not suggest any realistic or plausible alternative arguments that could have been made on sentencing that would have even remotely affected her sentence in a favorable way, much less an argument that Attorney Beneman would have been inclined not to make because of adverse personal interests.

While petitioner is a prolific writer, and has filed hundreds of pages of documents, in the end she says little of substance regarding Attorney Beneman's alleged conflict and its supposed adverse effect on his representation and her sentence. Accordingly, the petition is dismissed for the reasons given here and in the previous Order (document no. 6). See Rule 8, Rules Governing Section 2255 Proceedings for the United States Courts.

10

Petitioner's combined multiple motions (documents 9 and 10) are denied (although the court has considered the material in assessing the viability of petitioner's habeas claims). The government's motion to strike (document no. 11) is denied. The Clerk of Court shall close the case.

       **SO ORDERED.**

                                            _____
                                            Steven J. McAuliffe
                                            United States District Judge

April 17, 2003

cc:  Catherine D. Petit
     Margaret D. McGaughey, Esq.
     Clerk, U.S. District Court, Maine